UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. S2-4:09 CR 757 CAS |
| ) | |
| JEFFREY GREENWELL, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT**

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Richard G. Callahan, and Carrie Costantin, Assistant United States Attorney for said district, and files its Response to Defendant's Objections to Presentence Report.

Defendant objects to three portions of the Presentence Investigation Report ("PSR"). Each objection should be denied.

Paragraph 20

Defendant objects to paragraph 20 of the PSR which states that defendant befriended the two minor sons of Sandra Null (A.N. and B.N.) and he possessed nude photos of A.N. but that the victim denies any abuse by the defendant. The Government acknowledges that the PSR contains a typographical error: defendant possessed nude photos of *B.N.,* not A.N. These nude photographs of B.N. were located on defendant's computer. If defendant is contesting the

1

accuracy of these statements, the Government is prepared to present evidence at sentencing to support these facts.

If defendant's objection is that the information should be excluded because it is irrelevant, his objection should be denied. This information will not affect the sentencing guidelines applicable to the case. These facts were appropriately included in the PSR in accordance with Rule 32(c)(A), Rules of Criminal Procedure, which requires the PSR to contain information concerning the defendant's history and characteristics. Sentencing Guideline Section 1B1.4 states that: "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise permitted by law." See also, 18 USC 3661. Defendant's objection should be denied

Paragraph 25

Defendant objects to paragraph 25 which states that Sandra Null has requested $5,000 restitution for pain and suffering of A.N. and B.N. due to defendant's actions. It is the Government's position that restitution under 18 USC 2259 is limited to costs incurred by a victim for medical services, therapy, transportation, temporary housing, lost income, attorney's fees, and other losses incurred by the victim as a result of the offense. The statute does not provide for compensation for pain and suffering. Thus, the PSR correctly states that, due to the lack of specificity of Ms. Null's claim, no restitution should be ordered.

However, the information that Ms. Null has requested restitution is properly included in the PSR. As stated above, the Court may consider, without limitation, any information concerning defendant's conduct and its impact on others.

Sentencing Guideline Computations

Defendant objects to the sentencing guideline calculations and contends that the child pornography guidelines are based on Congressional whim and have no basis in research. The current child pornography guidelines are based upon the 2003 PROTECT Act (Prosecutorial Remedies and Tools against the Exploitation of Children Today). The Act was passed after extensive findings by Congress in response to the explosion of child pornography on the internet. Congress made the following findings:

> SEC. 501. FINDINGS.
>
> Congress finds the following:
>
> (1) Obscenity and child pornography are not entitled to protection under the First Amendment under *Miller v. California*, 413 U.S. 15 (1973) (obscenity), or *New York v. Ferber*, 458 U.S. 747 (1982) (child pornography) and thus may be prohibited.
> (2) The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *New York v. Ferber*, 458 U.S. 747, 757 (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain. *Osborne v. Ohio*, 495 U.S. 103, 110 (1990).
>
> (3) The Government thus has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." Ferber, 458 U.S. at 760.
> . . .
> (12) Child pornography results from the abuse of real children by sex offenders; the production of child pornography is a byproduct of, and not the primary reason for, the sexual abuse of children. There is no evidence that the future development of easy and inexpensive means of computer generating realistic images of children would stop or even reduce the sexual abuse of real children or the practice of visually recording that abuse. PROTECT Act, PL 108-21, 117 Stat 650, Section 501 (April 30, 2003).

Congress relied upon the Supreme Court's language in Ferber in adopting the PROTECT Act:

"[T]he use of children as ... subjects of pornographic materials is very harmful to both the children and the society as a whole."  S.Rep.No. 95-438, p. 5 (1977), U.S.Code Cong. & Admin.News 1978, p. 42.  It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.  Schoettle, *Child Exploitation:  A Study of Child Pornography*, 19 J.Am.Acad.Child Psychiatry 289, 296 (1980) (hereafter cited as *Child Exploitation*);  Schoettle, *Treatment of the Child Pornography Patient*, 137 Am.J.Psychiatry 1109, 1110 (1980);  Densen-Gerner, *Child Prostitution and Child Pornography:  Medical, Legal, and Societal Aspects of the Commercial Exploitation of Children*, reprinted in U. S. Dept. of Health and Human Services, Sexual Abuse of Children:  Selected Readings 77, 80 (1980) (hereafter cited as *Commercial Exploitation*) (sexually exploited children predisposed to self-destructive behavior such as drug and alcohol abuse or prostitution).  See generally Burgess & Holmstrom, *Accessory-to-Sex:  Pressure, Sex, and Secrecy*, in A. Burgess, A. Groth, L. Holmstrom, & S. Sgroi, *Sexual Assault of Children and Adolescents* 85, 94 (1978);  V. De Francis, *Protecting the Child Victim of Sex Crimes Committed by Adults* 169 (1969);  Ellerstein & Canavan, *Sexual Abuse of Boys*, 134 Am.J. Diseases of Children 255, 256-257 (1980);  Finch, *Adult Seduction of the Child: Effects on the Child*, Medical Aspects of Human Sexuality 170, 185 (Mar.1973);  Groth, *Sexual Trauma in the Life Histories of Rapists and Child Molesters*, 4 Victimology 10 (1979).  Sexual molestation by adults is often involved in the production of child sexual performances.  *Sexual Exploitation of Children*, A Report to the Illinois General Assembly by the Illinois Legislative Investigating Commission 30-31 (1980).  When such performances are recorded and distributed, the child's privacy interests are also invaded.  *New York v. Ferber*, 458 U.S. 747, 760 n.10 (1982).

As one authority has explained:

"[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."  Shouvlin, *Preventing the Sexual Exploitation of Children*: *A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).  See also *Child Exploitation* 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions");  Note, *Protection of Children from Use in Pornography:  Toward Constitutional and Enforceable*

4

*Legislation*, 12 U.Mich.J. Law Reform 295, 301 (1979) (hereafter cited as *Use in Pornography*) (interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). Thus, distribution of the material violates "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). Respondent cannot undermine the force of the privacy interests involved here by looking to *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), cases protecting the right of newspapers to publish, respectively, the identity of a rape victim and a youth charged as a juvenile offender. Those cases only stand for the proposition that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need ... of the highest order." *Id.*, at 103, 99 S.Ct., at 2671. *Ferber*, 458 U.S. 758, n.9.

According to Senate Report 108-002: "The purpose of S. 151, the Prosecutorial Remedies and Tools against the Exploitation of Children Today Act or 'PROTECT Act of 2003,' is to restore the government's ability to prosecute child pornography offenses successfully." Id. Further, in formulating the bill:

> The Judiciary Committee held a hearing on S. 2520 on October 2, 2002, and heard testimony from Daniel P. Collins, Associate Deputy Attorney General and Chief Privacy Officer, United States Department of Justice; Frederick Schauer, Professor of Law, John F. Kennedy School of Government, Harvard University; Anne M. Coughlin, Professor of Law, University of Virginia School of Law; and Daniel S. Armagh, Director, Legal Resources Division, National Center for Missing and Exploited Children. At that time, the Committee also considered the evidence and testimony presented on June 4, 1996, during the hearing on the Child Pornography Prevention Act of 1996, detailing the problems of child pornography and the technological changes in the production and dissemination of these materials. *Id*.

Defendant's assertion that the child pornography sentencing guidelines are irrational simply ignores the Congressional fact-finding that child pornography is harmful to children and that computers and the internet have greatly increased the dissemination of child pornography throughout the world. The guidelines in this case appropriately consider the harm that defendant

5

inflicted on these five children.  Defendant molested the boys, photographed his abuse and traded images of the abuse with other child molesters.  The Court should deny defendant's objections to the application of the Sentencing Guidelines in this case.

>
> Respectfully submitted,
> RICHARD G. CALLAHAN
> United States Attorney
>
>  s/ Carrie Costantin
> CARRIE A. COSTANTIN 54734
> Assistant United States Attorney
> 111 S. 10th  Street, Room 20.333
> St. Louis, Missouri  63102
> (314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ms. JoAnn Trog
121 West Adams
St. Louis, MO 63122

> s/*Carrie Costantin*
> CARRIE COSTANTIN  54734
> Assistant United States Attorney